# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL ALLEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 06-0432-WS-B |
| BALDWIN COUNTY COMMISSION, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion for summary judgment filed by John Henry, the sole remaining defendant. (Doc. 37). Henry has filed a brief and evidentiary materials in support of his motion, (Docs. 39-41), the plaintiff failed to respond,[1] and the motion is ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that Henry's motion for summary judgment is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, the plaintiff was an inmate at the Baldwin County Corrections Center ("the Jail") in the summer of 2004. While there, portions of the Jail's interior were being painted. On or about August 28, 2004, Henry instructed the plaintiff to clean toilets in the room then being painted and locked him in the room for two hours without the benefit of respiratory protection or adequate ventilation. The other individuals in the room were the painter, Bobby Ealum (a Jail employee), and the spotter, Kevin Bartley (an inmate). The complaint alleges that, as a consequence of Henry's

---

[1]The Court has denied the plaintiff's motion for enlargement of time, which was filed after the motion for summary judgment was taken under submission. (Doc. 46).

conduct, the plaintiff suffered physical problems, both at the time and continuing to the present.

The plaintiff sues Henry in his individual capacity pursuant to 42 U.S.C. § 1983, alleging that, as an employee of the Jail, he violated the plaintiff's Eighth Amendment right to be free of cruel and unusual punishment.[2]  In Count One, the complaint alleges that Henry: (1) "failed and neglected to use qualified personnel to plan and perform the painting work at the jail"; (2) "failed and neglected to provide adequate ventilation or personal protective gear"; and (3) "failed and neglected to provide Plaintiff access to Material Safety Data Sheets" ("MSDS").  (Doc. 1 at 9-10).  In Count Three, the complaint alleges that Henry:  "forc[ed] him to clean toilets with his bare hands"; "forc[ed] him to work inside a cell that was being coated with hazardous materials"; "den[ied] him a respirator and protective garments"; "lock[ed] the door so Plaintiff could not leave the cell"; "refus[ed] to provide any exhaust fans or other means of ventilation"; and "refus[ed] to allow any relief to Plaintiff after having been put on notice of Plaintiff's distress."  (*Id*. at 12).

Henry argues that he is entitled to qualified immunity, both because no constitutional violation occurred and because it was not clearly established in August 2004 that his alleged conduct violated the plaintiff's constitutional rights.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

---

[2]The complaint also references the Fourteenth Amendment.  Henry interprets this as a separate, due process claim, which cannot lie because the plaintiff was not a pretrial detainee.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  In fact, the plaintiff invokes the Fourteenth Amendment only as a source of his right to be free from cruel and unusual punishment.  (Doc. 1 at 12, ¶ 100).  Because the Eighth Amendment is made applicable to the states through the Fourteenth Amendment, *Chandler v. Crosby*, 379 F.3d 1278, 1289 n.20 (11th Cir. 2004), the plaintiff's usage is correct.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Id*. "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (internal quotes omitted).

Because Federal Rule of Civil Procedure 56(c) specifies that summary judgment may be entered only when the record evidence shows that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004). "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [citation omitted] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.*

Henry has submitted a large number of exhibits, some of which he has cited only generally despite their size. There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those portions of the exhibits to which Henry has specifically cited. The Court's review is similarly limited to those legal arguments he has expressly advanced.

**I. Qualified Immunity.**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defendant bears the initial

---

[3]*E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998)("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

burden of establishing that he was acting within the scope of his discretionary authority. *E.g., McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right." *E.g., Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry may be broken down into two parts: (1) whether the evidence, if believed, would establish a violation of the plaintiff's rights; and (2) whether it was clearly established at the time that the defendant's alleged conduct violated those rights. *E.g., id.*

### A. Discretionary Authority.

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. ... If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id.*

"To act within the scope of discretionary authority means that the actions were (1) undertaken pursuant to the performance of [the official's] duties and (2) within the scope of [his] authority." *Collier v. Dickinson*, 477 F.3d 1306, 1307 n.1 (11th Cir. 2007). The defendant must be "performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1255 (11th Cir. 2004). "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert International*,

157 F.3d at 1282 (internal quotes omitted).[4]

"A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice" to meet the defendant's burden of proof. *Harbert International*, 157 F.3d at 1282 (internal quotes omitted). Rather, "there must be a showing by competent summary judgment materials of objective circumstances that would compel th[e] conclusion" that the defendant acted within his discretionary authority. *Id*. (internal quotes omitted). The quantum and quality of evidence necessary to meet the defendant's burden "vary in proportion to the degree of discretion inherent in the defendant's office." *Harbert International*, 157 F.3d at 1282 (internal quotes omitted). In some cases, the very nature of the job will make it obvious that the defendant acted within his discretionary authority. *See, e.g., Adams v. St. Lucie County Sheriff's Department*, 962 F.2d 1563, 1568 (11th Cir. 1992) ("It is axiomatic that a law enforcement officer has the discretionary authority to pursue and apprehend a fleeing suspected offender."), *vacated on other grounds*, 982 F.2d 472 (11th Cir. 1993). In most cases, however, more than a job title is required.

A job title, however, is all that Henry has provided, characterizing himself as the Jail's "maintenance engineer." (Henry Deposition at 7-8; Doc. 39 at 2, 19). The threshold difficulty with this statement is that it addresses his job title only as of April 25, 2007 (the date of his deposition), not as of August 28, 2004. Nor does the term "maintenance engineer" have a fixed meaning, although it can be used as a synonym for "janitor." *E.g., Leben v. Barnhart*, 2006 WL 1149208 at *7 (W.D. Va. 2006); *Williams v. Iberville Parish School Board*, 314 F. Supp. 1104, 1111 (E.D. La. 1970). There is thus nothing in the title "maintenance engineer" that "compels" the conclusion that Henry was acting within his discretionary authority.

---

[4]For example, the issue in a case involving delivery of a prisoner into unconstitutional conditions is not whether the defendant had the authority to deliver a prisoner into unconstitutional conditions but whether he had the authority to transport and deliver prisoners. *Id*.

While unnoted in his brief, Henry's affidavit states that Ealum was his subordinate and that Henry "put [Ealum] in charge of the painting project" and left all "relevant decisions" to him. (Henry Affidavit, ¶¶ 5, 7). This testimony may suggest that Henry's job functions once included the painting project, but it does not compel the conclusion that Henry retained that function after delegating it to Ealum.

Even if Henry had met his burden of showing that he was performing a legitimate, job-related function, he has not attempted to show that he was doing so through means that were within his power to utilize. Henry posits that "[i]t is clear that [his] duties include ... using inmate labor," (Doc. 39 at 19), but it is not at all clear that a "maintenance engineer" is empowered to order inmates to clean toilets. Certainly on this record that conclusion is not compelled.

In short, Henry has not met his burden of showing that he acted within his discretionary authority. His motion for summary judgment is due to be denied on this ground alone. The Court nevertheless addresses the other components of his motion.

**B. Constitutional Violation.**

"To show a violation of [a prisoner's] Eighth Amendment rights, Plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Purcell ex rel. Estate of Morgan v. Toombs County*, 400 F.3d 1313, 1319 (11th Cir. 2005) (internal quotes omitted). Henry identifies three reasons the plaintiff cannot establish a constitutional violation: (1) his version of events is unsupported; (2) his current medical condition was not caused by the events of August 28, 2004; and (3) Henry was not deliberately indifferent. (Doc. 39 at 20-37). He thus challenges the second and third of the *Purcell* elements. The Court reviews these arguments in turn.

**1. The plaintiff's version of events.**

Henry argues that the plaintiff's version of events is wrong in three respects: (1) the paint being applied; (2) the use of MSDS; (3) whether and how he came to be locked in a room in which the paint was being applied; and (4) who had keys to the cell. (Doc. 39 at 20-23).

The complaint alleges that the product at issue is "Dry Fall." (Doc. 1 at 4). Henry denies that Dry Fall was used, (Henry Affidavit, ¶ 4), and the plaintiff conceded in deposition that he didn't know whether Dry Fall was used or not. (Plaintiff Deposition at 35). However, the plaintiff does have evidence that a paint product was applied by sprayer, that it sprayed mist in the air, and that the paint cans warned, "VAPOR HARMFUL. IRRITATES EYES, SKIN AND RESPIRATORY TRACT." (Plaintiff Deposition at 70; Henry Affidavit, ¶ 8 & Exhibit 1). The plaintiff thus has evidence that a harmful product was used, and Henry has not explained why it is significant that the harmful product was not Dry Fall but something else.

Henry acknowledges that there were MSDS for the paint and that he did not provide them to the plaintiff or other inmates or even tell the inmates of their existence. (Doc. 39 at 2; Henry Deposition at 10-11). He says that the plaintiff's claim based on failure to provide access to the MSDS nevertheless fails because the plaintiff didn't request to see them and because he admitted he wouldn't know how to use them if all they show is the ingredients, rather than dangers or symptoms. (Doc. 39 at 21). Henry does not explain why the plaintiff was required to request the MSDS; indeed, he does not even point out where in the record the plaintiff admitted not requesting them.[5] Nor has Henry provided any evidence that the MSDS in fact show only the ingredients.

---

[5] Henry simply cites generally to the entirety of the plaintiff's deposition. (*Id*. at 21 n.21). If the plaintiff somewhere therein admitted not requesting the MSDS, it was Henry's obligation to cite to that page in order to have it considered on motion for summary judgment. *See* note 3, *supra*. All Henry says in brief is that the plaintiff "does [not] testify in his deposition that he ever requested" an MSDS. (*Id*. at 21). Without a showing that the plaintiff was asked the question at his deposition, his failure to so testify is irrelevant.

With respect to what occurred on August 28, Henry acknowledges the plaintiff's testimony that Henry ordered the plaintiff to clean toilets in a room while it was being painted, that he shoved the plaintiff into the room without any protective gear and locked the door behind him, that he told the plaintiff through the glass that he wouldn't survive two minutes, and that he repeatedly flipped the plaintiff a bird and laughed at his predicament and pleas for release over the next two hours. (Doc. 39 at 21; Plaintiff Deposition at 70, 76-78, 80, 82). According to Henry, none of this matters because the plaintiff's version of events is contradicted by Henry and Bartley. (Doc. 39 at 21-22). This assertion is refuted by the very authority on which Henry relies, (Doc. 39 at 16): "[T]he court should give credence to the evidence favoring the non-movant [i.e., the plaintiff] as well as that evidence supporting the moving party [i.e., Henry] that is uncontradicted and unimpeached ...." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (internal quotes omitted). Here, the Court must credit the plaintiff's testimony concerning the events, not Henry's; while Henry's version may be bolstered by that of Bartley,[6] it is contradicted by the plaintiff's version and so cannot carry the day on motion for summary judgment.[7]

Finally, Henry counters the plaintiff's testimony that only Henry had a key with which to release the plaintiff from the room being painted with his testimony, and that of Bartley, to the contrary. (Doc. 39 at 22-23). Again, such conflicts in the evidence are not

---

[6]Even that is questionable. Henry denies even being in the area when the plaintiff arrived to clean the toilets, (Doc. 39 at 21-22), but Bartley testified that "[i]t seems like he [Henry] was" there when the plaintiff entered the room. (Bartley Deposition at 12).

[7]Henry insists that the plaintiff's evidence constitutes only "bare assertions and bald conclusory statements," in violation of *Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001). (Doc. 39 at 23). Henry does not explain how eyewitness testimony as to what occurred can be a bare assertion or conclusory statement. Nor does he recognize that *Marsh* addressed the detail required of a complaint to survive a motion to dismiss, *id*. at 1036 n.16, not the detail required of testimony to survive a motion for summary judgment.

amenable to resolution on motion for summary judgment.[8]

### 2. The plaintiff's medical condition.

Henry argues that the medical evidence refutes the plaintiff's allegation that his exposure to paint caused long-term damage to his lungs. Henry concludes that the plaintiff cannot maintain a cause of action, for want of evidence of damage caused by Henry's conduct. (Doc. 39 at 23-28). Whatever the state of the evidence concerning lasting damage, there is plainly evidence that, on August 28, 2004, the plaintiff experienced damages caused by his exposure to paint.

The plaintiff testified that he became dizzy and nauseated from the paint, which feelings continued to come and go after he was released from the room. A few hours later, during one such recurrent episode, he collapsed on the floor, regaining consciousness one or two days later. (Plaintiff Deposition at 80-81, 86-89). He remained hospitalized for a closed head injury for four days. (Doc. 39 at 10). Henry concedes — indeed, insists — that the plaintiff experienced a concussion from the fall, (Doc. 39 at 24, 25), and he does not suggest that this level of injury is so mild as to be non-actionable.

Nor does Henry attempt to show that the paint fumes could not have caused the plaintiff to collapse from dizziness.[9] The affidavit of Dr. Blickenstaff, on which Henry relies, states only that he does not believe the plaintiff lost consciousness due to the fumes, (Doc. 40, Exhibit U); it does not state that the plaintiff did not become dizzy and

---

[8]The plaintiff relies on what he was told during the incident by inmates and officers, (Plaintiff Deposition at 80, 85), but Henry does not challenge his testimony on hearsay grounds. A court may consider hearsay evidence on motion for summary judgment when, as here, no objection is raised. "[I]f evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987).

[9]The label from the paint can identifies dizziness as a side effect of exposure to its fumes. (Henry Affidavit, Exhibit 1).

fall due to the fumes, losing consciousness due to striking his head at the conclusion of his fall.

The plaintiff's alleged inability to establish any lasting effects from his exposure to paint, if shown, would presumably limit his damages to the relatively modest ones flowing from his dizziness, nausea and other symptoms, and concussion. It would not, however, prevent him from establishing compensable damages caused by his exposure to the paint fumes.

### 3. Deliberate indifference.

Henry argues that he could not have been deliberately indifferent with respect to his selection of a painter because Ealum was a professional painter before becoming a Jail employee. (Doc. 39 at 29). It is uncontroverted that Ealum was qualified to plan and perform the painting work. (Henry Affidavit, ¶ 6). Accordingly, Henry is entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to failing to provide adequate ventilation because he did provide adequate ventilation. He bases this on supposed admissions by the plaintiff and Bartley, (Doc. 39 at 29-30), but these witnesses actually testified that, although one or more vents were in the room, they were not actually circulating air. (Plaintiff Deposition at 103-04; Bartley Deposition at 20). Given this testimony, Henry's affidavit to the contrary cannot carry the day. Henry is not entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to failing to provide adequate personal protective gear because he made dust masks available to the inmates working on the project. (Doc. 39 at 30-31). However assuming for the moment that a dusk mask would have provided adequate protection, the plaintiff testified that on the day in question Henry shoved him into the room being painted and locked the door on him, despite his not having a dust mask or any other protection, and

-11-

knowingly left him for two hours. Henry is not entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to the MSDS because the plaintiff never asked to see them and would not have known what to do with them had he seen them. (Doc. 39 at 31). This is the same argument the Court found to be factually unsupported in Part I.B.1. Henry is not entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to forcing the plaintiff to clean toilets with his bare hands because the plaintiff never in fact did so. (Doc. 39 at 31). The plaintiff admits he did not clean toilets with his bare hands. (Plaintiff Deposition at 106). Henry is entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to locking the plaintiff in a room for two hours as it was being spray painted, with no respiratory protection or dust mask, because "[t]here is no testimony or evidence that Henry had any idea that the Plaintiff could suffer any injury" thereby. (Doc. 39 at 31). There is, on the contrary, a wealth of evidence from which a properly functioning jury could find that Henry was aware of facts from which the inference could be drawn and that he drew the inference. Without purporting to be exhaustive, that evidence includes the following: (1) Henry produced with his affidavit the label from the paint can, which identifies the serious physical consequences that can occur from exposure to the fumes, (Henry Affidavit, Exhibit 1); (2) Henry himself maintained the MSDS on the paint, (Henry Deposition at 10); (3) Henry was aware that spraying the paint puts a white fog into the air, (Henry Affidavit, ¶ 8); (4) Henry was aware that the painter insisted on wearing a respirator, (*id.*, ¶ 7); (5) Henry was aware that any inmate assisting the painter would need a dust mask, (*id.*, ¶ 8); (6) Henry was aware that no one other than the painter and the spotter were supposed to be in a room being painted, due to the white fog

produced by the spraying, (*id.*, ¶ 5; Henry Deposition at 18; Doc. 39 at 3); (7) a lot of people complained about the fumes, with at least two asking to be put back in jail to get away from them, (Plaintiff Deposition at 91); (8) Henry told the plaintiff he realized the plaintiff "don't like the smell of our paint," (*id.* at 76); and (9) when the plaintiff asked Henry to let him out, Henry replied, "You won't live two minutes." (*Id.* at 78).

Against this mass of evidence (which he ignores), Henry notes the following: (1) before the plaintiff, no one had gotten sick or passed out; (2) no one had complained to Henry about the fumes; and (3) work on the painting project was voluntary, yet the plaintiff kept volunteering. (Doc. 39 at 32). The absence of previous incidents is not impressive because, for all that appears on this record, the plaintiff was the first inmate forced to stay in a room being spray painted for two hours with no ventilation or protection. Moreover, what is required is appreciation of the *risk* of harm, not certainty that it will occur in a given case. The supposed failure of anyone to complain about the fumes is of indifferent significance for the same reasons. Moreover, Henry's testimony is contradicted by the plaintiff's testimony as to what Henry said to him as he shoved him in the room and by the plaintiff's communicated reaction to being locked in the room. Finally, that the plaintiff previously volunteered to work on the project counts for little, given Henry's admission that, before August 28, the plaintiff's assignments were limited to preparing surfaces in areas that were not then being painted. (Doc. 39 at 5, ¶ 11). Whatever the persuasive weight given Henry's points, they cannot preclude a properly functioning jury from concluding that Henry possessed the requisite mental state. Henry is not entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to locking the plaintiff in the room because he was an inmate, unentitled to exit. (Doc. 39 at 22). From the evidence cited above, a properly functioning jury could find that locking the door was part of Henry's plan to subject the plaintiff to harm. Henry is not entitled to summary judgment with respect to this allegation.

Henry argues that he could not have been deliberately indifferent with respect to refusing to provide the plaintiff relief after being put on notice of his distress because he didn't know the plaintiff was in distress. (Doc. 39 at 32). As discussed above, however, there is evidence from which a properly functioning jury could conclude that Henry was aware of the risk to which he had subjected the plaintiff and, once so aware, he would continue to be aware of the risk not only during the plaintiff's two-hour confinement but also upon the plaintiff's release. In a related vein, Henry argues that he could not have been deliberately indifferent because the plaintiff did not vomit or stop breathing in his presence. (*Id*. at 32-33). Henry has not explained how, given the evidence of his awareness of the risk of harm to which he had exposed the plaintiff, he could escape the consequences of that awareness simply because the plaintiff did not immediately exhibit dramatic symptoms. Finally, Henry argues that the plaintiff received all the relief he needed by being allowed a few minutes to breathe "fresh" air (inside the Jail) before being put back to work scraping paint in another part of the Jail. (*Id*. at 32). He offers no explanation how this respite severed as a matter of law his pre-existing deliberate indifference. Henry is not entitled to summary judgment with respect to this allegation.

Henry concludes his challenge to the plaintiff's ability to establish deliberate indifference by discussing three opinions involving paint. (Doc. 39 at 33-37). None rescues Henry's motion. In *Watson v. Sheahan*, 1994 WL 95782 (N.D. Ill 1994), the Court did not discuss deliberate indifference at all.[10] In *Jordan v. Cole*, 2006 WL 376239 (W.D. Ark. 2006), the plaintiff in his cell noticed paint fumes late one night, complained the next morning, and was rewarded with an immediate forbearance from painting near his cell, which "actions indicate that the defendant was not deliberately indifferent." *Id.* at *1, *4. Those facts are worlds removed from the plaintiff's evidence in this case, in

---

[10]The Court made only the straightforward observation that a mere allegation of exposure to paint fumes — without a further allegation that the exposure created a substantial risk of serious harm — fails to state a claim on which relief can be granted. *Id.* at *5-6.

-14-

which Henry knowingly forced the plaintiff to be exposed to paint fumes and droplets for two hours in a confined area, without ventilation, respirator or even dust mask and while making fun of his predicament and pleas for release.

In *Puckett v. Mitchell*, 2005 WL 234595 (W.D.N.C. 2005), the plaintiff was assigned to apply primer for about five months, during which time he was denied a respirator, received ventilation only sometimes, and experienced repeated episodes of upset stomach, burning sensation on his skin, and visions of black dots. One day the plaintiff collapsed from the smell and crawled out of the area, and the defendants presented him to medical staff. A few days later, he complained of headache, nausea, vomiting, dry throat and dizziness. Medical staff concluded he had been overexposed to paint fumes and forbade him to work without a respirator, which prohibition the defendants honored. *Id*. at *1. The Court concluded that the defendants had not acted with deliberate indifference because they took corrective measures shortly after the plaintiff first complained of side effects from exposure. *Id*. at *3. Henry extrapolates from *Puckett* that a defendant cannot be deliberately indifferent until and unless the prisoner experiences, and complains about, physical problems from the exposure. (Doc. 39 at 36). To the extent *Puckett* supports that proposition, the Court rejects it. First, the *Puckett* Court performed no analysis to reach such a conclusion and cited no authority in support of it. Second, the Supreme Court has made clear that a defendant can be liable for deliberate indifference to conditions that cause no present problems but threaten future ones. *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993) (environmental tobacco smoke).

### C. Clearly Established Law.

In a two-sentence argument, Henry contends that, because his lawyer has not located a binding case holding that forced exposure to paint fumes violates the Eighth Amendment, he could not have violated clearly established law. (Doc. 39 at 37-38).

While the question is "whether, at the time of the incident, every objectively reasonable police officer would have realized [his] acts violated already clearly established federal law[, ...] [t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful .... [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances ...." *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006) (internal quotes omitted). "The salient question ... is whether the state of the law ... gave [the officers] *fair warning* that their alleged treatment of [the plaintiff] was unconstitutional." *Skop v. City of Atlanta*, 485 F.3d 1130, 1144 (11th Cir. 2007) (emphasis in original) (internal quotes omitted). Thus, the absence of a "red cow" case[11] is not dispositive.

It was clearly established in August 2004 that a defendant's deliberate indifference to a significant risk of serious harm to an inmate violates the Eighth Amendment.[12] While in some situations a controlling case must hold that the specific conduct in which the defendant engaged rises to the level of deliberate indifference,[13] "[t]he applicable law

---

[11]*See generally Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1390 n.2 (11th Cir. 1993).

[12]*E.g., Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005) (pretrial detainee); *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997) (pretrial detainee); *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994) (prisoner's serious medical needs).

[13]*E.g., Andujar v. Rodriguez*, 486 F.3d 1189, 1205 (11th Cir. 2007) (while case law clearly established that intentionally delaying medical care to an inmate known to have a serious medical condition constitutes deliberate indifference, it did not clearly establish that a paramedic's reliance on police officers to transport a detainee for non-urgent treatment constituted a delay in medical care); *Sanders v. Howze*, 177 F.3d 1245, 1251 (11th Cir. 1999) (it was not clearly established that the particular suicide prevention measures the defendants employed were so inadequate as to constitute deliberate indifference); *Harris*, 21 F.3d at 393 (it must be clearly established, not simply that a delay in treatment of serious injuries may constitute deliberate indifference, but also that the extent of delay by the defendant exceeded the actionable threshold).

is clearly established if [it] dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (internal quotes omitted). Thus, "official conduct may be so egregious that further warning and notice beyond the general statement of law found in ... the caselaw is unnecessary ...." *Willingham v. Loughnan*, 321 F.3d 1299, 1302 (11th Cir. 2003). For example, a defendant who shoved a non-resisting prisoner down a flight of stairs or locked him in a freezer could scarcely complain that no Supreme Court or Eleventh Circuit case involving such conduct had been decided, because all reasonable, similarly situated public officials would realize that the conduct amounted to deliberate indifference.

This is such a case. Under the plaintiff's version of events (which the Court must credit for present purposes), Henry purposefully shoved the plaintiff into a room and locked him inside for an extended period without any protection or ventilation, purposefully exposing him to what Henry acknowledges by silence to be a significant risk of serious harm. All reasonable, similarly situated public officials in Henry's situation would realize that such conduct amounted to deliberate indifference.

## CONCLUSION

For the reasons set forth above, Henry's motion for summary judgment is **granted** with respect to the plaintiff's allegations that Henry failed to use qualified personnel to plan and perform the painting work and that Henry forced the plaintiff to clean toilets with his bare hands. In all other respects, the motion for summary judgment is **denied**.

DONE and ORDERED this 6th day of July, 2007.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE